UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS HAREL JENNINGS, II,           :
                                     :
            Petitioner,              :     Civ. No. 14-6881 (RBK)
                                     :
       v.                            :
                                     :     **OPINION**
WARDEN JORDAN HOLLINGSWORTH,         :
                                     :
            Respondent.              :

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Petitioner, Thomas Harel Jennings, is a federal prisoner currently incarcerated at F.C.I. Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which he challenges the outcome of a disciplinary proceeding brought against him. Respondent answered the Petition. For the following reasons, while the Court is troubled by the handling of Petitioner's disciplinary proceeding, Petitioner has not demonstrated that he is entitled to relief and his habeas petition will be denied.

## II. BACKGROUND

Petitioner is currently serving a sentence imposed by the Western District of Virginia in 2005. (Dkt. No. 1, at p. 1.) While incarcerated at F.C.I. Fort Dix, in July 2012, an investigation determined that he facilitated the importation of cigarettes into the prison during April 2012. According to an investigatory report completed by the SIS[1] Office ("SIS Incident Report"), Petitioner participated in the cigarette importation scheme with a co-inmate, Mr. McZilkey, and an outside party. (Dkt No. 1, at pp. 22-25.) Initially, that outside party was Ms. Molinary and,

---

[1] The report does not spell out the SIS acronym.

subsequently, Ms. Edwards. The SIS Incident Report incorporates incriminating oral testimony from Ms. Edwards. She provided a statement to SIS investigators after videotape and phone call evidence suggested that Ms. Edwards was obtaining money from Petitioner's family members, using that money to purchase cigarettes, and then delivering the cigarettes to Mr. McZilkey who would, in turn, deliver them to Petitioner.

Based on the investigatory report, on July 19, 2012, a disciplinary hearing was held and a Disciplinary Hearing Officer ("DHO") concluded that Petitioner violated Code 108, Code 217, and Code 297.[2] The ruling imposed several sanctions, including the revocation (disallowance) of 41 days of good conduct time (GCT). The GCT revocation was tied solely to the Code 108 violation.[3] Petitioner received a copy of this initial DHO ruling on July 30, 2012.

Thereafter, Petitioner appealed the ruling to the Mid-Atlantic Regional Office, and the Regional Director vacated the Code 108 violation in a ruling dated September 19, 2012. The Regional Director left intact the Code 217 and 297 violations. On January 8, 2013, on remand from the Regional Director's ruling, the DHO issued an amended DHO report that imposed additional sanctions. Specifically, the amended ruling disallowed a total of 54 days GCT—27 days each for Codes 217 and 297. Although this ruling was issued in January of 2013, Petitioner

---

[2] The nature of these code violations are explained in more detail in the analysis section of this opinion.

[3] Perplexingly, the initial DHO expressly states in section VII (Reason for Sanction or Action Taken) that the 41-day disallowance was imposed in connection with the Code 217 violation as well. (Dkt. No. 1, at p. 29.) On that same page of the report, however, there is a chart that lists the disallowance of GCT as linked solely to the Code 108 violation. (*See id.* (stating "108- Disallow Good Conduct Time.") The Court need not resolve this disparity, however, because Respondent has conceded that the disallowance of GCT was tied solely to the Code 108 violation. Therefore, the Court will assume for the sake of this ruling that the 41 days was not imposed in connection with the Code 217 violation.

did not receive notice of it until September 18, 2013.  Upon receiving notice, Petitioner appealed the amended DHO ruling through the appropriate channels, fully exhausting his claims before filing the instant habeas petition pursuant to 28 U.C.S. § 2241.[4]

### III.   DISCUSSION

Petitioner claims that the Bureau of Prisons ("BOP") unlawfully revoked 54 days of his good conduct time.  Where a petitioner's good conduct time is revoked, federal due process rights may be implicated.  The Third Circuit has explained:

> Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct.  *See* 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008).  When such a statutorily created right exists, "a prisoner has a constitutionally protected liberty interest in good time credit." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-57, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974))....
>
> [A] prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557, 94 S. Ct. 2963.

*Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (footnote omitted).  These minimum protections are "(1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (3) a written statement by

---

[4]   Section 2241 of Title 28 of the United States Code confers jurisdiction on district courts to issue a writ of habeas corpus in response to a petition from a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241," *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996), courts routinely evaluate exhaustion in such cases. Here, however, Respondent concedes that Petitioner has exhausted each of these claims. (Dkt. No. 3, at p. 10.)

the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67).

Moreover, the Supreme Court has explained that procedural due process concerns dictate that the disciplinary ruling be factually supported: "[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prisoner disciplinary [officer] are supported by some evidence in the record." *Id.* (internal quotation marks and citation omitted). The "some evidence" standard is applied by district courts when reviewing challenges to disciplinary proceedings. *Id.* The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is *any evidence* in the record that could support the conclusion reached by the disciplinary board.'" *Id.* (quoting *Hill*, 472 U.S. at 455-56) (emphasis added). Because "[r]evocation of good time credits is not comparable to a criminal conviction," the Supreme Court has explained, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456.

Petitioner makes several challenges to his disciplinary proceedings, each of which relate specifically to the amended DHO Report. First, he argues that he was entitled to rehearing on remand, and that he was not given proper notice of the amended DHO Report. In his view, these failures violated his constitutional due process rights. Second, he argues that the DHO violated his due process rights by imposing a greater sanction on remand, revoking more GCT than in the

4

initial DHO report. Finally, he argues that there is no evidence to support the Code 217 and 297 violations. The Court turns first to the sufficiency of the evidence challenges.

  A.  **Some Evidence**

Petitioner first argues that there was insufficient evidence to support the Code 217 violation imposed against him. A Code 217 violation may be imposed against those who have given or received money "from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose." 28 U.S.C. § 541.3 (Table 1). While Petitioner concedes that he possessed contraband, he argues that there was insufficient evidence before the DHO to demonstrate that he sent or received money. Specifically, he argues that both his testimony and the testimony of Ms. Edwards merely establishes that his family sent him money through her. He further disavows any connection between himself and Mr. McZilkey, arguing it was Mr. McZilkey who retrieved cigarettes from Ms. Edwards, not him.

  Despite Petitioner's characterization to the contrary, there was evidence before the DHO that Petitioner was involved in a three-party scheme with Ms. Molinary, and subsequently Ms. Edwards, and Mr. McZilkey. The DHO based the Code 217 violation on the SIS Incident Report, which found that Petitioner organized the introduction of contraband into the prison. (Dkt. No. 1, at p. 27.) The DHO further based this finding on email that Petitioner exchanged with Ms. Edwards in which he used coded language to arrange the contraband purchases. In an email to Ms. Molinary, for example, Petitioner told her that $75 would be coming in from "Dad." (*Id.*) Petitioner would also state in his email communications that he called "Dad," but there is no telephone record of him having called his father. Because there is no record of calls to Petitioner's father, the DHO Report finds that Petitioner's use of "Dad" is not literal, but is coded language related to the contraband scheme. (*Id.*)

5

As noted above, once Petitioner ceased communicating with Ms. Molinary, he began to be visited by Ms. Edwards. SIS, thereafter, became suspicious of Petitioner's interactions with Ms. Edwards and began to investigate. The DHO relied on the SIS Incident Report produced at the conclusion of this investigation. The report found that Petitioner planned a contraband exchange with Ms. Edwards during April 14-15, 2012. (*Id.* at p. 28.) Several days later, on April 16-17, 2012, investigators found a large amount of cigarettes at the prison. (*Id.*) The report notes that, after discovering the contraband, the investigators reviewed video cameras recording activity on April 14, 2012. In those videos, they saw Mr. McZilkey give a mesh bag to Petitioner that contained cigarettes. (*Id.*) SIS then obtained a voluntary oral statement from Ms. Edwards on May 1, 2012, in which she admitted to delivering the cigarettes, and other items, at Petitioner's direction. She further implicated Mr. McZilkey in retrieving the cigarettes from her vehicle on April 14, 2012. (*Id.*)

This Court concludes that the foregoing evidence easily satisfied the "some evidence" standard. As explained above, this Court's review is limited to whether there is "*any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Through his arguments before this Court, Petitioner attempts to disassociate himself from Mr. McZilkey's action and to splice Ms. Edwards' testimony in a manner that absolves him from any responsibility. However, the evidence from the SIS Incident Report cited above provided the DHO with sufficient basis for linking Petitioner to their actions. Moreover, Petitioner's argument that Ms. Edwards did not expressly state that Petitioner received money from her does not alter this Court's analysis. (*See* Dkt. No. 4, at p. 2.) As noted above, her testimony, as recounted in the report, clearly expressed that Petitioner directed her to obtain the cigarettes on his behalf.

Petitioner next challenges the evidence supporting the Code 297 violation. That violation prohibits the "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 U.S.C. § 541.3 (Table 1). In support of his challenge to this violation, Petitioner argues that there was no evidence to support the SIS Incident Report's conclusion that he solicited contraband over the telephone. He further hinges his challenge on Ms. Edwards' testimony. He argues that, because she never stated that she spoke in code with him, that the investigating officer's conclusion in the SIS Incident Report is based on nothing but his own "self-serving opinions." (Dkt. No. 1, at p. 20.)

Although Petitioner may disagree with the report's conclusion that he spoke in code over the telephone with Ms. Edwards, there is sufficient evidence within the report to support the Code 297 violation. The DHO relied on the report's statement regarding a phone call between Petitioner and Ms. Edwards that took place on April 14, 2012:

> At 7:28 AM, on April 14, a call was placed to Ms Edwards at telephone number 606-813-9300 by inmate Jennings, during the call he asked, "When you got that money from my aunt, that $100, where did she send it from? Ms Edwards replied, "Tennessee." Following this call, Ms Edwards visited. Following the visit at 7:54 pm, inmate Jennings called Ms Edwards and asked what she was doing, she replied, "driving." he then asked, "Did you go see Trey?" She replied, "Yeah," she added, "It went well {pause} trey." It was determined "Trey" was a code for the inmate who was meeting her. Trey is Jennings' minor child who lives in Virginia.

(Dkt. No. 1, at p. 28.)

By relying on this language from the SIS Incident Report, the initial DHO ruling documents Petitioner's use of the telephone to call Ms. Edwards, and it further connects the phone call to the delivery of contraband on April 14th by noting that the conversation was coded. As with Petitioner's conversations with Ms. Molinary, the DHO could interpret Petitioner's

7

references to family members in his call to Ms. Edwards, and the money, as related to his receipt of cigarettes that same day. Indeed, the DHO could interpret the reference to "Trey" as a non-literal one, as it is unlikely that Ms. Edwards would have traveled to Virginia and seen Petitioner's son on the same day she visited Petitioner. To be sure, it is possible that Ms. Edwards did in fact visit Petitioner's son that day, but it is at least equally possible that she did not visit him and that the reference to "Trey" was a codename for Mr. McZilkey. Applying the "some evidence" standard, the Supreme Court has upheld disciplinary board findings that were based on "meager" evidence. *Hill*, 472 U.S. at 457. The evidence here is more than meager and adequately supports the DHO's finding.[5]

The Court makes a few additional notes. Petitioner's suggestion throughout his papers that the DHO should not rely on Ms. Edwards' testimony because she did not sign a formal statement does not alter this Court's ruling. Petitioner argues that the DHO's (via the SIS Incident Report's) reliance on Ms. Edwards' oral statement violates BOP Program Statement 5270.09 ("BOP Program Statement"). According to Petitioner, the program statement provides that "witnesses should sign a statement, if possible"; however, Petitioner did not provide a pinpoint citation to the Court. (Dkt. No. 4, at p. 2.) The Court reviewed the entire program statement, and did not find this provision.[6] Rather, the BOP Program Statement states that

---

[5] Petitioner's arguments that Ms. Edwards' testimony does not decipher the code is irrelevant. (Dkt. No. 4, at p. 3.) As explained above, as long as there is *any evidence* from which the DHO could have concluded that Petitioner's recorded conversation was in code, due process is satisfied.

[6] There is a provision, with respect to confidential informants, that states: "If possible, the statement must be signed by the confidential informant." (BOP Program Statement, at 32.) Needless to say, Ms. Edwards is not a confidential informant.

As for other outside witnesses, the BOP Program Statement provides that "[w]ritten statements from outside witnesses *may* be used by the DHO in lieu of live testimony." (BOP

8

"adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the incident report and other investigative materials." (BOP Program Statement, at 31.) If anything, this language suggests that no written statement is required. Moreover, "[t]he 'some evidence' standard may be satisfied solely by an incident report." *McCarthy v. Warden Lewisburg USP*, No. 15-1826, 2015 WL 7567280, at *1 (3d Cir. Nov. 25, 2015). Therefore, the DHO reliance on Ms. Edwards' oral testimony, documented in the SIS Incident Report, did not violate Petitioner's due process rights.

Lastly, Petitioner implies that the DHO erred in determining that his testimony was not credible. As the Court of Appeals has explained, "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.' *McCarthy*, 2015 WL 7567280, at *2 (quoting *Hill*, 472 U.S. at 455). Furthermore, where there is conflicting testimony, the DHO's decision must be based on the "greater weight of the evidence." *Id.* Here, the DHO reasoned in the initial report that Petitioner gave conflicting testimony throughout the investigation process. (Dkt. No. 1, at p. 28.) Petitioner seeks to explain away the conflicting testimony; however, the DHO was free to credit the findings in the SIS Incident Report, the testimony of Ms. Edwards, and the video tape evidence over Petitioner's version of events. In this Court's view, this combined evidence supports the DHO's conclusion that the greater weight of the evidence showed that Petitioner used a telephone as part of a scheme to exchange his family's money for cigarettes, and to introduce that contraband in the prison. For each of these reasons, Petitioner's sufficiency of the evidence challenges fail.

---

Program Statement, at 31. (emphasis added)) However, the Program Statement does not indicate that written statements must be used where possible.

9

### B. Remand Challenges

Having concluded that there was some evidence to support the code violations that remained intact on remand, the Court now turns to Petitioner's challenges related to the remand. First, Petitioner argues that he was entitled to notice and rehearing on remand before his GCT was revoked. Second, he argues that, on remand, the DHO was prohibited from imposing a greater sanction that he had received in the initial DHO Report. For the reasons explained in more detail below, the Court is troubled by the treatment Petitioner received on remand. Nonetheless, under current law, the Court is required to deny Petitioner's request for relief.

#### 1. Notice and Rehearing

As explained above, Petitioner appealed the initial DHO Report, which found that he violated Codes 108, 217, and 297, to the Regional Director. In a decision dated September 19, 2012, the Regional Director concluded that there was sufficient evidence to support the Code 217 and 297 violations, but there was insufficient evidence to support the Code 108 violation. (Dkt. No. 1, at p. 38.) Other than vacating the Code 108 violation, the appellate ruling indicated that "[t]he required disciplinary procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense." (*Id.*) The ruling on appeal indicated to Petitioner that he would "receive an amended report in the very near future." (*Id.*)

Because the 41 GCT disallowance was linked solely to the Code 108 violation, on remand, this left Petitioner with no GCT-related sanction on the 217 and Code 297 violations. No rehearing was held by the DHO, and the amended DHO Report was issued—based on the same evidence presented at the initial disciplinary hearing—on January 8, 2013. (Dkt. No. 1, at p. 35.) Despite the Regional Director's statement that Petitioner would soon receive an amended

report, Petitioner did not receive the amended report until a full eight months after the report was issued.  He received notice on September 18, 2013.  (*Id.*)

Petitioner argues that the failure to hold a rehearing, and the failure to provide him with timely notice of the amended report denied him procedural due process.  Respondent does not dispute that a rehearing was not held, nor that Petitioner received a long-delayed notice of the amended report.  In Respondent's view, the remand process did not trigger any further procedural protection because it involved a mere "administrative correction of a sanction …."  (Dkt. No. 3, at p. 13)  Citing *Knaub v. Zickefoose*, Respondent argues that Petitioner received all the process he was due in connection with the initial disciplinary hearing process. No. 11-938, 2011 WL 6153701 (D.N.J. Dec. 12, 2011).

In *Knaub*, a petitioner was charged with a Code 108 violation and, at an initial hearing, it was determined that he committed the prohibited act.  The petitioner appealed that decision, and the Regional Counsel found that a procedural error had occurred and directed a rehearing.  *Id.* at *2.  A rehearing was held and, at the conclusion of the rehearing, the DHO again determined that the petitioner committed a Code 108 violation and imposed the same sanctions as before.  *Id.*

Seeking relief by way of habeas petition in federal district court, the petitioner argued that he was denied due process when the BOP "increas[ed] the severity of the sanctions for possession of a cell phone without adequate notice." *Id.* at *6.  At first glance, this statement is confusing, since the petitioner in *Knaub* received the same sanction on remand, not an increased sanction.  Upon closer review of the opinion, however, it becomes clear that the petitioner was challenging the BOP's pre-initial hearing decision to convert his charge from the less severe 305 code violation to a higher severity Code 108 violation.  The opinion implies that the petitioner was initially given notice of a 305 code violation but, by the time of his initial hearing, that

11

violation was upgraded to a Code 108 violation.[7] Relying on a panel of the Third Circuit's then-recent decision in *Hall v. Zickefoose*, 448 F. App'x 184 (3d Cir. 2011), the *Knaub* Court held that "[w]hile Petitioner has due process rights to notice as to general categories of the acts prohibited, he has no due process right to notice as to any specific administrative sanction he might face if his violation gets detected." *Knaub*, 2011 WL 6153701, at *6. The court reasoned that the language of the code itself placed the petitioner on notice "that Code 108 sanctions could be applied to him …." *Id.*

Because Petitioner's challenge here relates to the imposition of different sanctions on remand, *Knaub* is factually distinguishable. In holding that a petitioner "has no due process right to notice of any specific administrative action," *id.*, it is clear that the court was not referring to new or additional sanctions imposed on remand, but to a change in the type of violation pursued in an initial disciplinary hearing. Accordingly, the Court does not find *Knaub*'s reasoning instructive here.

There is other case law that addresses Petitioner's challenges, however. As for the late notice that Petitioner received, a recent Third Circuit decision, *Griffin v. Ebbert*, rejects a similar due process claim based on a petitioner's failure to receive a copy of a DHO report until eighteen months after it was issued:

> We recognize that, pursuant to the Supreme Court's decisions in *Wolff* and *Hill*, Griffin was entitled to a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." As the District Court explained, however, Griffin *failed to demonstrate that he was prejudiced* by the prison's apparent failure to promptly provide him with a copy of the DHO

---

[7] *See id.* at *5 (describing the petitioner's claims as "nearly identical" to those in *Hall v. Zickefoose*, 448 F. App'x 184, 186 (3d Cir. 2011)); *id.* at *5-6 (quoting the following excerpt from *Hall*: "Hall argued that his due process rights were violated because he did not receive notice that the penalty for possession of a cellular phone increased from a moderate severity level violation under PAC 305 to a greatest severity level violation under PAC 108.")

12

> report. Contrary to Griffin's contention, the regulations permit an inmate like Griffin to proceed through the administrative appeal process without a written DHO report as long as he states in his appeal the date of the hearing and the nature of the charges against him. In fact, Griffin did appeal the decision here. Although he now complains that he had to rely on his "memory and/or a guess" in that appeal, he does not explain which portions of the DHO's written report he would have challenged if it had been in his possession.

No. 14-4123, 2016 WL 54114, at *2 (3d Cir. Jan. 5, 2016) (internal citations omitted) (emphasis added).  Critically, the Third Circuit held in *Griffin* that "[i]n the absence of a showing of prejudice, we cannot say that Griffin was denied the process he was due." *Id.* (citing *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003)).

Just as the petitioner in *Griffin*, Petitioner here has not shown that he was prejudiced by the failure to timely receive a copy of the amended DHO report.  Although the Court finds it disturbing that Petitioner did not receive notice of the amended report until eight months after it was issued, Petitioner was nonetheless permitted to appeal the amended DHO report.  (*See* Dkt. No. 1, p. 39.)  And, he received a timely response from the Regional Director to that appeal.  (*See* Dkt. No. 1, p. 41.)  Indeed, Petitioner further acknowledges that he was even able to appeal the Regional Director's decision to Washington.  (*See* Dkt. No. 1, p. 7.)  Therefore, Petitioner is not entitled to habeas relief based on the untimely notice; "the delay had no prejudicial effect on [Petitioner's] administrative appeal and thus does not provide a basis for habeas relief." *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (discussing BOP's failure to provide timely notice under 28 C.F.R. § 541.17(g)).

As for the lack of rehearing, Petitioner has not pointed to any case law, regulation, or Program Statement language that requires rehearings on remand.  And, this Court's research reveals that courts have held that no disciplinary rehearings are required to support amended

DHO reports where "the factual nature of the alleged prohibited conduct . . . remain[s] the same." *Sanders v. Zickefoose*, No. 13-1595, 2015 WL 4729831, at *8 (M.D. Pa. Aug. 10, 2015); *see id.* (collecting cases). This is particularly so where the petitioner has not demonstrated that he would have presented new evidence, or otherwise shown how his strategy would have differed, on remand. *Id.* at *9. Here, Petitioner has not argued that he would have presented new evidence or would have otherwise challenged the sanctions imposed on remand. Indeed, this is not a case where a new violation was added on remand, or new evidence was presented. The Code 217 and 297 violations were not disturbed on appeal, and remained in full effect. It was only the sanctions imposed in connection with those violations that were altered, and no new evidence was considered by the DHO when amending the sanctions. Accordingly, the lack of rehearing and untimely notice did not prejudice Petitioner, and do not compel habeas relief in this case.

### 2. Greater Sanction

The Court now turns to Petitioner's argument that his sanctions should not have been increased on remand. The Court finds this aspect of the treatment Petitioner received the most disconcerting. Imposing greater GCT sanctions on remand when one of a petitioner's code violations had been vacated could create the appearance of retaliation, and could discourage petitioners from appealing erroneous DHO rulings.

The heightened sanction is even more troubling when viewed in connection with the long-delayed notice that Petitioner received of the amended DHO ruling. After the Code 108 violation was vacated on appeal from the initial DHO Report, Petitioner was told that he would receive an amended DHO Report forthwith. As noted above, he did not. He received the

amended DHO Report eight months later, which was his first indication that additional GCT time had been revoked from him.

Respondent's primary argument in support of the amended DHO ruling is that the DHO was mandated by law to revoke 27 days for each violation. In other words, Respondent suggests that the initial DHO Report contained a legal error and that, when the error was noticed on remand, the DHO was obligated to fix the error and impose the correct sanction. They cite to 28 C.F.R. § 541.4 in support of their position. Indeed, that regulation provides that, for high severity level offenses like Code 217 and 297 violations, inmates "will lose at least 27 days, or 50% of available credit if less than 54 days are available for the prorated period, for each act committed." 28 C.F.R. § 541.4(b)(2). Respondent further notes that Petitioner was convicted pursuant to the Prison Litigation Reform Act (PLRA), and that revocation of GCT is mandatory for such offenders. *Id.* at § 541.4(a)(2).

Petitioner does not dispute the applicability of 28 C.F.R. § 541.4 to him, but argues that the DHO had discretion not to follow the regulation on remand. While the regulation states that the loss of GCT is "mandatory," *id.*, Petitioner points to language in the BOP Program Statement that provides: "[a] decision to go below the guidelines is warranted for strong mitigating factors." (BOP Program Statement, at p. 14.) He further points to language in the Program Statement indicating that "[w]here a remand is directed, . . . the DHO is bound by the original sanction(s) . . ." except in specified circumstances. (*Id.* at p. 35.) Finally, he points to BOP Program Statement language indicating that "PLRA inmates are *ordinarily* disallowed GCT for each prohibited act" for a "minimum of 27 days …." (*Id.* at p. 14 (emphasis added).)

Even assuming that the DHO had discretion to ignore the "mandatory" language in § 541.4, and that the BOP Program Statement authorized the DHO to forego the 27-day penalties

15

on his violations, Petitioner's due process rights were not violated by the increased sanctions. All that *Wolff* requires is that Petitioner be given advance notice of the disciplinary charges, the opportunity to present evidence in his defense, and a written ruling explaining the evidence relied on by the DHO and the reasons for the disciplinary action. 418 U.S. at 563–67. Because the increased sanction was tied to charges that had already been explained to Petitioner in the initial DHO ruling, and affirmed on appeal, Petitioner cannot now argue that he was not given notice, was denied the opportunity to present evidence, or was denied a written explanation. He received all that process in connection with the initial DHO ruling. Petitioner has not pointed to any authority indicating that additional due process is required when a sanction for a previously-noticed and defended charge is increased on remand.

Moreover, even if the DHO acted contrary to the BOP Program Statement language, "[a] prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff* …." *Macia v. Williamson*, 219 F. App'x 229, 233-34 (3d Cir. 2007). In addition, to prevail on a due process claim, a petitioner must show that the BOP's failure to comply with its own procedural safeguards prejudiced him. *See Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011). Because this Court has concluded that there is some evidence to support the Code 217 and 297 violations, and the sanctions imposed by the DHO are within the range permitted (if not mandated) by § 541.4, Petitioner cannot show that he suffered prejudice. *See Macia*, 219 F. App'x at 233-34 (concluding that sanctions "well within the BOP guidelines for punishment . . . do not amount to a constitutional violation"). Any BOP error was harmless. *See id.* (applying harmless error analysis to BOP's alleged non-compliance with its Program Statement); *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (same).

16

## IV.   CONCLUSION

For the foregoing reasons, the habeas petition is denied.  An appropriate order will be entered.


DATED:  March 4, 2016

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
